## THE KAISERINE MARIA THERESIA.

(District Court, S. D. New York. October 5, 1903.)

1. COLLISION—SCHOONER OVERTAKEN BY STEAMSHIP—FAILURE TO EXHIBIT STERN LIGHT.

Article 10 of the international navigation rules (Act Aug. 19, 1890, c. 802, § 1, 26 Stat. 320 [U. S. Comp. St. 1901, p. 2866]), which requires a vessel which is being overtaken by another to show from her stern a white light or flare-up light, applies to a schooner which is being overtaken by a steam vessel, and she is in fault for a collision resulting from her failure to observe it.

2. SAME—REMOVAL OF LOOKOUTS FROM STATIONS—DUTY TO REDUCE SPEED.

It was the duty of a steamship which was compelled, by the coldness of the weather and the freezing of the spray, to remove her lookouts from their proper places forward to the bridge, to reduce speed so that she could reverse in time to avoid collision with a vessel ahead after such vessel could be seen; and where she continued at full speed she was in fault for a collision with a schooner which she overtook, although the latter was primarily in fault for exhibiting no stern light, where she could have been seen in time to have avoided the collision if the lookouts had not been removed from their proper stations.

In Admiralty. Suit for collision.

Carver & Blodgett and Convers & Kirlin, for libellants.
Shipman, Larocque & Choate, for claimant.

ADAMS, District Judge. This is a libel which was filed by the officers and crew of the British schooner Pavia, to recover the damages caused by a collision with the steamship Kaiserine Maria Theresia, on the Atlantic Ocean in the early morning of the 4th of January, 1901. The schooner was proceeding from Port Morion, Cape Breton, to Boston, loaded with frozen fish, and the steamship from Cherbourg, France, to New York, with passengers and a general cargo. There was a strong wind prevailing, practically a gale, from the north-west. The weather was clear but extremely cold. The schooner was headed

about west, south-west and the steamship about west ¾ north. The schooner's side lights were set and burning but could not be seen from the steamship, which was approaching from astern.

The schooner contends that the steamship was solely in fault for the collision because she had no lookouts properly stationed, and the steamship contends that the schooner was solely in fault because she did not exhibit a light as required by article 10, International Rules (Act Aug. 19, 1890, c. 802, § 1, 26 Stat. 320 [U. S. Comp. St. 1901, p. 2866]), which provides:

"A vessel which is being overtaken by another shall show from her stern to such last mentioned vessel a white light or a flare-up light."

The steamship's contention against the schooner must be sustained. The schooner had no white light set astern, and failed to properly exhibit a flare-up light. She had a torch aboard but it was not in condition for use for lack of oil, so that when it was lighted and attempts made, on two occasions, to exhibit it to the steamship it quickly went out and, in effect, she exhibited no light astern.

The real question in the case is whether the steamship should also be held. Her lookouts were stationed on the bridge instead of forward or in the crow's nest on the foremast. The testimony shows that the coldness of the weather had caused the spray, which flew aboard the steamship, to freeze on the forward part of the vessel including the foremast, so that the removal of the lookouts to the bridge was justified by the circumstances, but it remains to be determined whether the continuance of the steamship at full speed of from 15 to 17 knots was excusable. I do not consider that it was. The upper parts of the schooner's masts could be seen above the horizon without regard to a light astern and were seen by the officers and men stationed on the bridge but not until the vessels were in such close proximity that it was deemed best on the steamship not to stop but to endeavor to avoid the schooner by use of the helm and one of the engines. If the steamship had been proceeding at a slower rate of speed, the collision could doubtless have been avoided by the reversal of her engines. The removal of the lookouts from the best positions for seeing ahead imposed a duty upon the steamship to slacken her speed, so that she would be under command and could reverse in time to avoid a collision with a sailing vessel ahead of her, which could be seen without a light exhibited astern. Full speed under the circumstances was inconsistent with the duty of the steamship to stop if there should be danger and there was danger here, which doubtless could have been seen in time to avoid if the lookouts had not been removed from their proper stations. Their removal necessitated the precaution of reducing speed. The Java, 14 Blatch. 524, 530, Fed. Cas. No. 7,233. The conclusion reached is based upon the steamship's testimony; therefore this case does not fall within The Iberia (D. C.) 117 Fed. 718; Id. (C. C. A.) 123 Fed. 865.

Decree for the libellants for half damages, with an order of reference.